## (March 15, 1983)

■ FERMETAL STEEL CORP., Appellant-Respondent, v HARSCO CORPORATION, Respondent-Appellant, et al., Defendants. — Order, Supreme Court, New York County (Ostrau, J.), entered on September 3, 1982, affirmed on the opinion of

Ostrau, J., at Special Term. Defendant-respondent-appellant shall recover of plaintiff-appellant-respondent $75 costs and disbursements of these appeals. Concur — Murphy, P. J., Kupferman, Asch and Kassal, JJ.

Sandler, J., dissents in part in a memorandum as follows: In an action to recover commissions allegedly due under a certain settlement agreement, plaintiff Fermetal Steel Corp. and the principal defendant Harsco Corp. appeal from the denial of their respective motions for summary judgment, each arguing that only an issue of law is presented, and that summary judgment should have been awarded in its favor. I agree with both of the parties that the essential facts are not in dispute, and that the issue presented is one of law only. For reasons that follow, I would decide that issue of law in favor of the defendant and accordingly modify the order to grant defendant Harsco's cross motion for summary judgment dismissing the complaint, and otherwise affirm. On May 23, 1956 Harsco and Tata Iron & Steel Co., an Indian corporation, entered into an agreement (the Recovery Agreement) pursuant to which Tata would pay Harsco for services rendered by Harsco in the recovery of scrap metal from Tata's steel mill operations in Jamshedpur, India. Alleging an oral agreement entitling Fermetal to a 2½% commission on Harsco's gross receipts under the Recovery Agreement for services rendered in bringing together officials of Tata and Heckett Engineering, Inc. (now merged into Harsco), Fermetal in 1957 brought an action seeking recovery of such commissions. In 1959 the action was discontinued with prejudice pursuant to a negotiated settlement agreement. The settlement agreement provided in pertinent part that Harsco was to pay Fermetal 1½% of the gross revenues which shall accrue to Harsco under the Recovery Agreement, "for so long as the Recovery Agreement shall remain in effect as provided in paragraph 14(i) thereof." "Gross revenues" were defined as billings accepted by Tata for services rendered by Harsco. Paragraph 14 (i) of the Recovery Agreement provided in pertinent part that after a 10-year period the agreement was to be automatically renewed for further successive periods of five years each unless either party shall give to the other notice in writing of its intention to terminate the agreement not less than 12 months before the expiration of such renewal period. Central to the issue presented on the appeal is the construction of paragraphs 8 and 9 of the settlement agreement, which provided in pertinent part as follows: "8. HARSCO shall have the right at any time in its sole discretion to alter, amend or adjust any one or more of the provisions of the Recovery Agreement and to discontinue its operations under the Recovery Agreement at any time. In the event that the Recovery Agreement is terminated or canceled at any time or that HARSCO discontinues its operations under such agreement for any reason whatever, HARSCO shall cease therewith to have any further obligations of any kind whatever under the provisions of this agreement * * * Nothing in this agreement shall be construed as imposing any obligation whatever on HARSCO to continue operating under the Recovery Agreement for the duration of such agreement as provided in paragraph 14(i) thereof. 9. Notwithstanding any other provisions of this agreement, in the event that HARSCO discontinues its operations under the Recovery Agreement for any reason whatever prior to May 23, 1966, or that such agreement is terminated or canceled prior to that date, and thereafter, but prior to May 23, 1966, HARSCO resumes operations under the Recovery Agreement or enters into a new agreement with TATA for the recovery of scrap iron and steel, then HARSCO shall be obligated to resume making the payments provided for in this agreement for the duration of the Recovery Agreement, in the case of a resumption of operations under the Recovery Agreement, or until May 23, 1966, in the case operations are pursuant to a new agreement; and in the latter

case, the provisions of this agreement shall apply to such new agreement as they now apply to the Recovery Agreement." The legally significant events that followed the settlement agreement are undisputed. In 1973 India enacted the Foreign Exchange Regulation Act, effective January 1, 1974, mandating that all corporations doing business in India had to be at least 60% owned by resident Indian interests. Pending the accomplishment of such ownership, corporations doing business in India were required to obtain from the Reserve Bank of India a C.O.B. (Carry-On Business) license. For the period 1974 to 1978 Harsco applied for and was granted such licenses, each effective for one year only. The Recovery Agreement with Tata was extended to coincide with the period of each extension. The requirement of such C.O.B. licenses, renewable on a one-year basis, effectively rescinded the renewal provision set forth in paragraph 14 (i) of the Recovery Agreement. On January 1, 1979 the Recovery Agreement was extended for the last time for a further limited period of six months, an extension retroactively approved by the Indian government on May 15, 1979. Harsco and resident Indian interests then formed a company known as Ferro Scrap Nigam, Inc. (FSN). In June, 1979, FSN entered into an agreement with the Metal Scrap Trade Corporation (MSTC), a quasi-governmental agency, under which FSN would be owned 60% by MSTC and 40% by Harsco, and a majority of the FSN board of directors, as well as its chairman and chief operations manager, would be appointed by the Steel Authority of India. At the same time Harsco entered into an agreement with FSN whereby Harsco transferred all of its Indian business, including its facilities on Tata's premises, to FSN. As required by the Indian government, all business done by Harsco pursuant to the Recovery Agreement after January 1, 1979 was turned over to FSN or accounted for. On July 30, 1979 Harsco notified Tata that its business had been transferred to FSN and that the existing Recovery Agreement with Harsco was accordingly terminated. FSN entered into a new agreement with Tata effective August 1, 1979. On or about August 17, 1979 Harsco notified plaintiff that its obligation to pay commissions had terminated because Harsco had ceased to do business with Tata. In denying summary judgment to both parties, Special Term perceived an ambiguity in paragraphs 8 and 9 of the settlement agreement with regard to Harsco's obligation to make commission payments in the event of a termination of the Recovery Agreement after May 23, 1966. I perceive no such ambiguity. Paragraph 8 of the settlement agreement is explicit that Harsco has the unqualified right to discontinue its operations under the Recovery Agreement at any time, and that in the event of such termination, or discontinuance of "operations under such agreement for any reason whatever, HARSCO shall cease therewith to have any further obligations of any kind whatever under the provisions of this agreement". The only qualification in the agreement to this clear, explicit language is that if either of the stipulated contingencies occurred prior to May 23, 1966, and Harsco thereafter resumed operations either under the Recovery Agreement or a new agreement, Harsco would be obligated to resume making the provided payments either "under the Recovery Agreement, or until May 23, 1966, in the case operations are pursuant to a new agreement". The language could not be clearer that Harsco's obligation to make the payments provided in the settlement agreement was to cease if operations under the Recovery Agreement terminated after May 23, 1966. The undisputed facts — indeed the facts that both parties insist are undisputed — make it clear that Harsco ceased doing business under the Recovery Agreement at a date later than May 23, 1966. There may be an arguable question as to whether the termination occurred on January 1, 1979 or on August 1, 1979, when the new agreement between Tata and FSN became effective. In view of the fact that operations

pursuant to the Recovery Agreement between January 1, 1979 and August 1, 1979 were subject to a government mandate that all proceeds during that period were to be turned over to FSN, the earlier date seems realistically the appropriate date of termination. In any event, there is no suggestion of the existence of unknown facts with regard to this period of time that would justify a trial on this limited issue. The only remaining question is raised by Fermetal's contention that Harsco violated an obligation to act in good faith with regard to the termination of operations under the Recovery Agreement. As applied to the clear, meticulously worked-out provisions for termination of responsibility set forth in paragraphs 8 and 9 of the settlement agreement, the very most that an obligation of good faith could mean here is that Harsco could not properly terminate operations under the Recovery Agreement for the sole purpose of putting an end to its obligation to pay commissions to Fermetal. As so defined, it is clear that no breach of Harsco's obligation of good faith occurred here. What occurred here, very much to Harsco's detriment, was done under the constraint of Indian law and in accordance with the requirements of the Indian government. The doubtful and speculative possibility that the Indian authorities might have permitted another arrangement consistent with their law that would have technically permitted continued operation under the original Recovery Agreement, seems to me a wholly insufficient basis for a finding that Harsco violated an obligation to act in good faith under the agreement. Accordingly, the order of the Supreme Court, New York County (Ostrau, J.), entered September 3, 1982, in an action to recover commissions pursuant to a settlement agreement, denying plaintiff's motion for summary judgment and granting Harsco's cross motion for summary judgment only to the extent of directing plaintiff to serve an amended complaint, limiting its claim to breach of contract, and deleting all claims against defendant Simpson and all claims for fraud and conspiracy, should be modified, on the law, and the cross motion of defendant Harsco for summary judgment dismissing the complaint should be granted, and otherwise affirmed.